LOTTINGER, Judge.
These four consolidated suits result from a rear end collision or collisions involving three automobiles.
*61 Suit No. 7869 entitled Paul Jones, et ux. v. Leon Lungaro, et al., La.App., 231 So.2d 60, was filed by Paul Jones, individually and on behalf of his minor child, Pamela, and his wife, Mrs. Ruby Jones, as petitioners against Leon Lungaro and his liability insurer, Hanover Insurance Company, as well as Frank Hardesty, his employer, Shelly Brawley and Brawley’s Parts, Bumper and Plating Works, Inc.
Suit No. 7870, entitled Roy F. Vick, et al., Versus Leon Lungaro, et al., La.App., 231 So.2d 65, was filed by Mr. Roy F. Vick, individually and for and on behalf of his minor children, Frank Vick, Mark Vick, and Diane Vick and his wife Gloria C. Vick, as petitioners against Leon Lungaro and Hanover Insurance Company, his liability insurer, as well as Frank Hardesty and his employer, Shelly Brawley doing business as Brawley’s Parts, as defendants.
Suit No. 7871,' entitled Hanover Insurance Company Versus Frank Hardesty, et al., La.App;, 231 So.2d 66, was filed by the Hanover Insurance Company, as petitioner, against Frank Hardesty, his employer, Shelly Brawley, Brawley’s Parts, Bumper and Plating Works, Inc. to assert its sub-rogation claim for damages paid under its collision insurance policy to Leon Lungaro resulting from the collision of the Hardesty vehicle with the Lungaro vehicle. Joined as a defendant was Safeco Insurance Company of America, the liability insurer of defendants, Hardesty, Brawley and Bumper.
Suit.No. 7872, entitled Leon A. Lungaro Versus Frank Hardesty, et al., La.App., 231 So.2d 66, was filed by Leon A. Lungaro against Frank Hardesty, Shelly Brawley, and Brawley’s Parts, Bumper and Plating Works, Inc., as defendants, for personal injuries sustained in the accident.
Prior to trial herein the claims by the Vicks and the Jones against Hardesty, his employer and insurer were compromised, however, all rights were reserved as against the other defendants, namely Lungaro and Hanover. Also prior to trial, Mr. Lungaro died and his heirs were substituted as parties defendant.
Judgment below in suit No. 7869, entitled Paul Jones, et ux. Versus Leon Lun-garo, et al., was rendered in favor of petitioner, Paul Jones, for the sum of $125.00 for medical expenses incurred by him for his wife and minor child, in favor of Paul Jones for and on behalf of his child, Pamela Jones, in the sum of $150.00 and in favor of Mrs. Ruby Jones in the sum of $750.00, said judgments being against Leon Lungaro and his insurer, Hanover Insurance Company.
In suit No. 7870, entitled Roy F. Vick, et al. Versus Leon Lungaro, et al., judgment was rendered in favor of Mr. Vick for special damages in the sum of $348.80, in favor of Mr. Vick on behalf of his three minor children, Frank, Mark and Diane, in the sum of $150.00 each, and in favor of Mrs. Vick in the sum of $1,000.00, said judgment being against the heirs of Leon Lungaro and Hanover Insurance Company.
In suit No. 7871, judgment was rendered in favor of Hanover Insurance Company in the sum of $933.66 on its subrogation claim, and against Hardesty, his employer and insurer. Furthermore, in suit No. 7872, judgment was rendered in favor of petitioner, the Lungaros, and against Hardesty, his employer, and insurer in the sum of $2,-389.85 for personal and property damages resulting from the second collision.
From the above judgments, appeals were taken by the heirs of Leon Lungaro and his insurer, Hanover Insurance Company, as well as> Hardesty, his employer and insurer. Answers to appeals were filed by the plaintiffs in suit No. 7869 entitled Paul Jones, et ux. Versus Leon Lungaro and in suit No. 7870 entitled Roy F. Vick, et al. Versus Leon Lungaro, et al.
During the course of these proceedings, settlements were made of the suits by the Vicks and Jones against Hardesty, his employer and insurer, and therefore same were dismissed. Because of the dismis- *62 sab of said defendants, the Lower Court reduced by one-half the judgment in their favor.
The above mentioned suits were tried at the same time by the Lower Court and one set of written reasons was given, however, individual judgments were rendered in each case. We will do likewise, that is we will render one set of reasons for judgment, and will grant separate judgments in each of the four cases which are now before us.
The facts disclose that on February 3, 1967, all three vehicles involved in the collision were traveling in a southerly direction on Scenic Highway in the city of Baton Rouge, Louisiana. The first of the vehicles were driven by Mrs. Vick and Mrs. Jones and several of the Vick and Jones children were riding as passengers. The vehicle owned and operated by Leon Lun-garo, now deceased, and which was insured by Hanover Insurance Company was following the Vick vehicle, and following the Lungaro vehicle was a pick up truck owned by Shelly Brawley but operated by his employee, Frank Hardesty, which latter vehicle was insured by Safeco Insurance Company.
The facts as found by the Lower Court are as follows:
“The facts of this case, as supported by the evidence, appear to be as follows : On the morning of February 3, 1967, Mrs. Vick, her three children, and Mrs. Jones and her child, Pamela Jones, as guest passengers were riding in the Vick vehicle. Mrs. Vick was driving and was .proceeding in a southerly direction along Scenic Highway in the inside lane of southbound traffic. In the 3100 block of Scenic Highway Mrs. Vick sig-nalled to make a lefthand turn and slowed to a stop to allow oncoming traffic to clear so that she could make her turn. While stopped and waiting to complete her turn, Mrs. Vick’s vehicle was hit from the rear by a 1966 Comet Station Wagon, owned and driven by Mr. Leon Lungaro. Very shortly after this collision, the Lungaro vehicle was hit from the rear by a 1959 Ford pickup truck being driven by Mr. Frank Hardesty. The force of this collision caused the Lungaro station wagon to impact the second time with the Vick car.
“As the result of these two collisions, injuries were sustained by all three drivers, Mrs. Vick, Mr. Lungaro, and Mr. Hardesty, and also by the occupants of the Vick vehicle, Frank, Mark, and Diane Vick, and by Mrs. Ruby Jones and her minor child, Pamela Jones.
“La.R.S. 32:81A imposes a statutory duty upon the driver of a following vehicle.
The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
The jurisprudence supporting this is legion. This statute imposes upon a following motorist a duty to exercise great care, sometimes referred to as extraordinary care. Evans v. Thorpe, La.App., 2 Cir., 175 So.2d 418. As a general rule, when a following vehicle collides with the rear of the lead car, the following driver is considered to be at fault. Zeno v. Breaux, La.App. 3 Cir., 164 So.2d 666. So it can be seen, that the duty imposed upon Lungaro and Hardesty as following drivers was a very high one.
“The evidence shows that Mrs. Vick had properly signalled, slowed, and stopped to make her left turn before she sustained the first impact. She cannot be found contributorily negligent. Lun-garo breached his duty to Mrs. Vick by following too closely and too fast. This breach was the cause of his collision with Mrs. Vick and of the damages and injuries resulting therefrom. Lungaro was clearly negligent toward Mrs. Vick and the occupants of her car.
*63 “Hardesty owed the same duty to Lun-garo as Lungaro owed to Mrs. Vick. In addition, he owed to Mrs. Vick and the occupants of her car, the duty of reasonable care for any foreseeable damages that might result from his own negligence toward Lungaro. The evidence shows that Hardesty breached his duty and that this breach was the cause of damages and injuries to the Lungaro car and partly at least to the Vick car and to the occupants of both vehicles. Hardesty was clearly negligent toward Lungaro and Mrs. Vick and the occupants of the Vick car.
“Both Mrs. Jones and Mrs. Vick testified that their car was struck twice. They testified after the first blow that the children started screaming and almost instantly they were hit the second time. Hardesty testified to the same effect that he saw the Lungaro car strike the Vick car and that then Har-desty’s car hit Lungaro and knocked him into the Vick car the second time. A Mr. Cotton who had a place of business immediately across the street from where the accident happened said that he distinctly heard the squealing of car tires twice. He said his back was to the accident but when he heard the wheel squealing he immediately looked around and Lungaro’s head and body were bobbing back and forth like a head and body would bob as the result of a collision either in front of him or from the rear. Cotton testified he saw Lungaro’s head bob back and forth immediately before Hardesty’s car struck the Lun-garo car. Lungaro was not present to speak for himself at the trial, but all of the above facts add up and convinced the court beyond any shadow of a doubt that the Lungaro car struck the Vick car first and almost immediately was himself struck by the Hardesty car, knocking the Lungaro car into the Vick car the second time. No other solution is possible from the above statement of facts.
“After the accident and before the trial Mr. Lungaro died and by stipulation of counsel his heirs were made parties-litigant. By stipulation the American Bank and Trust Company, executor of Mr. Lungaro’s estate, is made party-plaintiff to assert whatever interest they may have. The court is convinced from the medical evidence that Mr. Lungaro’s death was not due in any respect as a result of this accident.”
With regard to the evidence which is in the record, both Mrs. Vick and Mrs. Jones testified that after Mrs. Vick had brought her vehicle to a complete stop preparatory to making a left-hand turn, they felt the force of the first impact. This impact caused the children who were riding in the rear seat to fall to the floor and commence screaming. Both ladies testified that they had turned around to pick up the children from the floor and to console them before they felt the blow of the second impact.
Mr. Cotton, the bystander, who the record discloses was a friend of Mr. Lun-garo, testified that he was standing in the front of his welding shop when he heard the screeching of brakes. He immediately turned around and, according to his testimony, saw the Lungaro vehicle stopped less than a car’s length to the rear of the Vick vehicle and Mr. Lungaro’s head was bobbing back and forth. Although Mr. Cotton did not see the Lungaro vehicle strike the Vick car, his testimony indicates that at the time he first noticed the Lun-garo car it had either struck and bounced back from the Vick vehicle and Mr. Lun-garo’s head was still bobbing back and forth from the force of the impact, or Mr. Lungaro had succeeded in bringing his vehicle to a stop a distance of less than the length of a car to the rear of the Vick vehicle and that his head was bobbing back and forth because of the sudden stop. In any event, Mr. Cotton was still observing this scene when he again heard the screeching of brakes and he saw the Har- *64 desty truck tear into the rear of the Lun-garo automobile, shoving it into the Vick vehicle.
We feel that the findings of fact by the Lower Court are correct and that same are supported by a preponderance of the evidence. Therefore, under the well established principal of our jurisprudence to the effect that the findings of fact by a Trial Court are entitled to grant weight and should not be set aside lightly, such findings are sustained by this Court. LaFiette v. Travelers Insurance Company, 191 So.2d 790.
As stated by the Lower Court the claim by the various petitioners for damages against Frank Hardesty, his employer and insurer, was compromised prior to the trial of this matter and the rights of plaintiff were reserved insofar as the other defendants were concerned. Therefore, the Lower Court gave a credit equal to one-half of the damages sustained by petitioners, in rendering judgments in favor of the Jones and the Vicks.
Counsel for the Lungaros, complains that this was error on the part of the Lower Court as, if the Court were to determine that there were two separate collisions and that Hardesty and Lungaro were both negligent, but are not joint tort-feasors, then it would be necessary to determine what damages, if any, were sustained in each collision. In support of his contention, counsel cites Jarreau v. Toye Bros. Yellow Cab Co., La.App., 24 So.2d 700, and Henderson v. Falgout, La.App., 183 So.2d 675.
The Jarreau case concerned rear end collisions involving four vehicles. The second vehicle, driven by petitioner, first ran into and damaged the first vehicle and, shortly thereafter, the fourth vehicle ran into the third vehicle shoving it into the second vehicle, and, in turn, shoving the second vehicle into the first vehicle, which had been stopped. The driver of the second vehicle sued the driver of the fourth vehicle for damages. In that case the Court dismissed the suit holding that a substantial part of the damages to petitioner’s car was caused when he struck the first vehicle, and that, as petitioner was unable to show how much of the damages was caused by that collision and how much additional damage was caused from the chain reaction when the fourth vehicle struck the first vehicle, the petitioner had failed to sustain his burden of proving the damages sustained in the two collisions.
In the Henderson case, the Lower Court awarded a summary judgment against one defendant motorist and his insurer and dismissed suit as to the other defendants. The plaintiff appealed and then moved to remand the matter to the Lower Court in order to take additional testimony. In that case we held that petitioner was not entitled to a remand for the purpose of taking testimony of purported eye witnesses when he had made no effort to introduce affidavits or depositions in opposition to defendant’s motion for a summary judgment and had ample time to secure said affidavits and depositions before petitioner’s attorney had left on a trip to Europe. The question there was a procedural one and is not similar to the question now before us.
Article 2324 of the Louisiana Civil Code provides:
“He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.”
In Fouquier v. Travelers Ins. Co., La.App., 204 So.2d 400, this Court was faced with a three car collision, the facts of which are strikingly similar to the facts now before us. In that case petitioner brought her car to a near stop because of traffic conditions, when the following vehicle driven by Martin was unable to stop and struck the rear of plaintiff’s car. Thereafter, a third vehicle, operated by Wilson, struck the Martin vehicle and *65 drove it again into the rear of petitioner’s vehicle. Suit was filed by the driver of the plaintiff’s vehicle and her passengers against the drivers and insurers of the Martin and Wilson vehicles. In that case we said:
“There is no question as to the liability of the defendants herein. Neither Miss Martin nor Wilson were able to advance any reason as to their failure to observe the vehicle ahead of them and stop before striking it. Their failure to keep a proper lookout and maintain their vehicles under control is clear and makes them guilty of negligence, proximately causing the accident, and soli-darily liable for the damage caused thereby.”
Although the Lower Court did not cite the decision in the Fouquier case in support of its decision, we feel that the Lower Court was correct in holding that Lungaro and Hardesty were joint tort feasors and were thus liable in solido. A similar result was reached by us in Ford v. Williams, La.App., 62 So.2d 838. See also Abrego v. Tri-State Transit Co., La.App., 22 So.2d 681. Therefore, the allowance of a credit of one-half of the damages sustained by all petitioners except the Lungaro interest in the judgment rendered below was correct under the theory advanced in Harvey v. Travelers Ins. Co., La.App., 163 So.2d 915.
There is no real dispute before this Court as to the quantum of damages allowed the remaining petitioners, and under the prevailing jurisprudence to the effect that the allowance of damages by the Lower Court is not to be disturbed unless there is an abuse of the discretion of the Lower Court. Gaspard v. LaMaire, 245 La. 239, 158 So.2d 149.
In Suit No. 7872 filed by the Lungaros, the defendants in the alternative plead contributory negligence on the part of Mr. Lungaro. A similar plea is made in Suit No. 7871 filed by Hanover on its claim for subrogation to damages paid on the Lungaro vehicle. As we have held Mr. Lungaro to have been guilty of concurring or contributory negligence, the judgments of the Lower Court in these suits should be reversed.. Furthermore, the plaintiffs in these two suits have failed to prove the amount of damages resulting solely from the fault of the defendants. The judgments of the Lower Court in Suits Nos. 7869 and 7870 should be affirmed.
For the reasons hereinabove assigned, the judgments of the Lower Court in Suits No. 7871 and 7872 will be reversed and there will be judgment therein in favor of defendants and dismissing petitioners’ demands. The judgments of the Lower Court in Suits No. 7869 and 7870 will be affirmed. All costs of this appeal to be paid by defendants.
Judgment affirmed.